■ RALPH D'ALLEVA, Respondent, v VANDA D'ALLEVA, Appellant.—In a matrimonial action in which, after an inquest, the parties were divorced by judgment of the Supreme Court, Queens County (Calabretta, J.), dated July 18, 1984, the defendant wife appeals, as limited by her brief, from so much of an order of the Supreme Court, Queens County (Berkowitz, J.), dated February 18, 1986, as denied her motion to vacate or modify the judgment.

Ordered that the order is reversed insofar as appealed from, with costs, and the matter is remitted to the Supreme Court, Queens County (Calabretta, J.), for an evidentiary hearing on the issues raised by the motion and the plaintiff husband's opposition thereto, and for a new determination in accordance herewith.

In this matrimonial action, the parties were married on May 12, 1974. Two children were born of the marriage: a son now 10 years of age, and a daughter now 7 years of age. In or about February 1983 the plaintiff husband instituted this action seeking a divorce from the defendant on the ground of cruel and inhuman treatment. The defendant interposed an answer and counterclaims for divorce. Issue having been joined, the case appeared on the Trial Calendar on November 23, 1983, and psychiatric examinations were ordered. The psychiatrist examined the defendant on two occasions and stated that she suffered from a "Depressive Neurosis" and was taking prescribed drugs resulting, according to the plaintiff, in a condition in which "she was constantly asleep".

The action next appeared on the Trial Calendar on January 5, 1984, was adjourned on consent to January 12, 1984, then

to January 31, 1984, and again to February 1, 1984, on each of which four trial dates the "parties and/or their attorneys" appeared in court. However, on each of four subsequent trial dates, the plaintiff and his attorney appeared, the defendant's attorney appeared, but the defendant failed to appear. Efforts were made by her attorney and by the court (via the Clerk of the Court) to obtain her appearance, but she said that she wanted the whole matter dropped and would not appear. As a result, her counsel applied for an order relieving him from representing her, which application was granted. Faced with the facts before him indicating a willful default, Justice Calabretta properly proceeded with an inquest. Thereafter, an inquest which had been commenced with the defendant's counsel present was completed without the presence of the defendant or any attorney on her behalf, and Justice Calabretta, on June 22, 1984, rendered a detailed 20-page decision which, *inter alia,* granted a divorce to the plaintiff, awarded him sole custody of the two infant children with visitation rights to the defendant, granted the plaintiff exclusive possession and occupancy of the marital apartment, directed the defendant to vacate the marital apartment within 30 days of service of a copy of the judgment to be settled on the decision, directed that the parties share in the income and losses from the rentals derived from the building in which the marital apartment was located, directed that the defendant share equally in the proceeds of sale of the building but did not direct a deadline for such sale, and directed that the defendant be awarded $90 per week maintenance for a two-year period.

After judgment was entered on July 18, 1984, the defendant continued to live in the marital residence with the plaintiff but, according to the defendant, she was "thrown out of the house on or about October 29th, 1984". The plaintiff stated that she was finally removed by the police who had handcuffed her, and that, prior thereto, she was resistant to leaving the apartment and was harassing him.

The defendant's first motion to vacate or modify the judgment of divorce was denied without prejudice to renewal on proper papers setting forth an excusable default and a meritorious defense. The defendant's second motion to vacate or modify the judgment sets forth a detailed denial of the plaintiff's claims of cruel and inhuman treatment. In addition, as an excuse for her default, the defendant contends that the plaintiff had been advising her that he would not go through

with the divorce. In her affidavit dated February 20, 1985, the defendant stated as follows:

"I loved my husband and spoke to him on a regular basis throughout the entire proceedings. *On all of the dates that he was in Court, we spoke and he assured me that he would not be getting a divorce.* I believed him and did not believe my attorney, Mr. Montell, nor did I believe the person who I spoke to and now find to be a member of the Court's staff. I had every reason not to disbelieve my husband. We were living together as husband and wife, sharing the same bed together, having marital relations on a regular basis * * *

"During the entire course of events, we visited friends together, we went to the beach, we went shopping together, there was no mention made to our friends and neighbors that we were getting a divorce. *I firmly believed my husband, that he was not proceeding to obtain a divorce;* therefore, when I heard these statements by Mr. Montell and by the other parties that I must appear in Court, I frankly did not trust them, did not believe them and therefore never appeared" (emphasis supplied).

The defendant asserted that even after the divorce judgment was served, her husband told her not to worry about it; it was only a piece of paper and they were not going to live by it.

The plaintiff vigorously disputed the defendant's assertions. Special Term (Berkowitz, J.) initially directed that a hearing be held on the defendant's motion (and the plaintiff's cross motion to deprive the defendant of her visitation rights), but, subsequently, after communicating with Justice Calabretta, revoked the order setting the matter down for a hearing and decided the motion himself, rather than referring it to Justice Calabretta. Thus, Special Term denied the defendant's motion to vacate the judgment of divorce without a hearing.

We start with the concept that the general rule with respect to opening defaults in other civil actions is not to be applied so rigorously in a matrimonial action *(see, Pisano v Pisano,* 71 AD2d 670; *Levy v Levy,* 67 AD2d 998). With the stakes involving the termination of a marriage, the custody of children and the distribution of marital property, our courts have reiterated a liberal policy of vacating defaults in matrimonial actions *(see, Breen v Breen,* 114 AD2d 920; *Lucas v Lucas,* 109 AD2d 781; *Ray v Ray,* 108 AD2d 905; *Antonovich v Antonovich,* 84 AD2d 799).

Moreover, although the judgment was entered after the

defendant refused to appear for trial and a motion to vacate an order or judgment made on default may be made on notice to any Judge of the court (CPLR 2221 [1]), it was an improvident exercise of discretion on the facts of this case not to refer the defendant's motion to Justice Calabretta who was thoroughly acquainted with the case and the circumstances involving the default and who heard testimony and issued the judgment (see, Maggiore v Maggiore, 49 AD2d 1021).

Further, the defendant's motion to vacate the default judgment should not have been decided without an evidentiary hearing on the issues (see, Pisano v Pisano, supra). At bar, there is evidence that the defendant—suffering from a depressive neurosis and under emotional stress—was allegedly misled by the plaintiff into failing to appear. Although there is substantial evidence that her default was consciously made, her decision to default should be weighed in the light of her then mental and emotional condition, whether she was fraudulently deceived to do so, and under all of the other circumstances of the case (see, Ray v Ray, supra).

Accordingly, we remit this matter to Justice Calabretta for a hearing on all the issues raised by the defendant's motion to vacate the judgment of divorce. Brown, J. P., Weinstein, Rubin and Spatt, JJ., concur.